**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANNE DOLMAGE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No: |
| COMBINED INSURANCE COMPANY OF AMERICA, an Illinois corporation, | |
| Defendant. | JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Anne Dolmage ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, upon personal knowledge as to facts pertaining to her and on information and belief as to all other matters, brings this Complaint against Combined Insurance Company of America ("Defendant" or "Combined Insurance").

## NATURE OF THE CASE

1. This is a consumer class action lawsuit brought by Plaintiff, individually and on behalf of all others similarly situated ("Class members"), who were covered under insurance policies issued by Defendant and whose personally identifiable information—including their names, addresses, dates of birth, Social Security numbers, and insurance enrollment and premium information (collectively, "PII")—entrusted to Defendant was left unsecure and unprotected for approximately 16 months on a server accessible to anyone with an Internet connection (the "Security Breach").

2.     Defendant flagrantly disregarded Plaintiff's and the other Class members' privacy rights in failing to take reasonable, industry-standard security measures to safeguard their PII from unauthorized disclosure.

3.     Plaintiff was damaged as a direct and foreseeable result of Defendant's wrongful actions and inaction and the resulting Security Breach. As a result of the Security Breach, a fraudulent income tax return for 2013 was submitted in Plaintiff's name to the IRS by an identity thief or thieves, cell phone charges were incurred in Plaintiff's name without her authorization, and medical charges were incurred in Plaintiff's name without her authorization.

4.     Plaintiff purchased insurance policies that were offered by Combined Insurance through her employer, Dillard's. According to Defendant, as of April 15, 2014, Dillard's had received at least 30 claims of fraudulent tax returns from Dillard's employees subsequent to the Security Breach.

5.     Defendant's wrongful actions and inaction and the resulting Security Breach constitute violations of the Fair Credit Reporting Act and the Illinois Insurance Code, negligence and negligence per se, breach of fiduciary duty, breach of contract, breach of implied contract, unjust enrichment, and invasion of privacy by public disclosure of private facts.

6.     Plaintiff, on behalf of herself and the Class, seeks actual damages, economic damages, statutory damages, nominal damages, exemplary damages, injunctive relief, attorneys' fees, litigation expenses, and costs of suit.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) this action is brought as a proposed class action under Fed. R. Civ. P. 23; (b) the proposed Class includes more than 100 members; (c) at least one proposed Class member is a

citizen of a state that is diverse from Defendant's citizenship; and (d) the matter in controversy exceeds $5,000,000, exclusive of interest and costs. The Court also has jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 (federal question), and over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction). The Court has personal jurisdiction over Defendant, because it is an Illinois corporation with its headquarters in Glenview, Illinois, and it conducted (and continues to conduct) substantial business in the Northern District of Illinois.

8.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to this action occurred in the Northern District of Illinois and Defendant resides in and conducts substantial business in the Northern District of Illinois.

## PARTIES

9.    Plaintiff is a Missouri citizen. In June 2011, Plaintiff purchased insurance coverage from Combined Insurance, which was offered to Dillard's employees. Plaintiff maintained such coverage until July 2012. Plaintiff's PII was compromised as a result of the Security Breach. As detailed herein, as a result of the Security Breach, Plaintiff has been a victim of identity theft, identity fraud, and medical fraud.

10.    Defendant Combined Insurance is an insurance provider headquartered in Glenview, Illinois. It has offices located throughout the United States and its agents are located in every state. Combined Insurance provides a number of insurance products, including disability, accident, health, and life insurance policies.

## BACKGROUND FACTS

11.     On or around July 8, 2013, Defendant learned that for approximately 16 months, from March 2012 until July 2013, Plaintiff's and the other Class members' PII had been stored on an unsecure Internet server maintained by a third-party enrollment system vendor. *See* Exhibit 1: July 26, 2013 letter to Plaintiff from Combined Insurance ("Breach Notification Letter"). During this period of time, anyone with an Internet connection was able to access Plaintiff's and Class members' PII without their knowledge, authorization, or consent.

12.     Defendant is an insurance company that has provided and continues to provide supplemental insurance to certain Dillard's employees and their dependents.

13.     In a letter dated July 26, 2013, Defendant notified Plaintiff and the other Class members that their PII was stored on an Internet server maintained by a third-party enrollment system vendor from March 2012 until July 2013, without proper security measures. *See* Exhibit 1: Breach Notification Letter.

14.     The putative Class consists of persons who purchased certain policies, as referenced in Exhibit 1, from Defendant between March 2010 and March 2012, and dependents covered under such policies.

15.     As individuals who were covered by Defendant's insurance policies, Plaintiff's and the other Class members' PII was entrusted to Defendant.

16.     Despite knowing about the Security Breach since at least July 8, 2013, Defendant did not begin to formally notify Plaintiff and Class members of the Security Breach until July 26, 2013—more than two weeks after learning of the Security Breach and more than 16 months after the information was first stored on an Internet server without proper security measures.

17.     During the intervening period between the Security Breach and the date the first wave of notification letters were sent to Plaintiff and Class members on July 26, 2013, the PII was accessible for sale and misuse on the robust international cyber black market, while Plaintiff and Class members had no chance whatsoever to take measures to protect their privacy. Defendant's willful and wanton conduct placed Plaintiff's and the other Class members' PII in the well-known and well-recognized sphere of harm for such information.

18.     Defendant has admitted that the PII entrusted to it was improperly stored:

> [O]n July 8th, 2013, we learned that two files containing the personal information of certain Dillard's associates and their dependents were stored on an Internet server by a third party enrollment system vendor since March 2012 without the proper security measures. The files contained the Social Security numbers, names, addresses, dates of birth, and enrollment and premium information for some associates and dependents. The files did not, however, contain personal medical or claims information.

*See* Exhibit 1: Breach Notification Letter. In the aftermath of the Security Breach, Defendant represented to affected individuals that it took remedial steps, including removing the files from all publicly-accessible online environments. *Id.*

19.     Notwithstanding Defendant's wrongful actions and inaction and the resulting Security Breach, Defendant offered a mere one year of credit monitoring services. Defendant's offer is plainly insufficient given the trove of PII that was made available to the world and the well-documented manipulation and machinations of cyber-criminals.

20.     Defendant's wrongful actions and inaction—to wit, failing to maintain reasonable security measures to protect Plaintiff's and Class members' PII with which it was entrusted—caused the dissemination into the public domain of Plaintiff's and Class members' PII without their knowledge, authorization, or consent.

21.     As a result of Defendant's failure to properly safeguard and protect Plaintiff's and Class members' PII entrusted to it, Plaintiff's and Class Members' privacy has been (and will continue to be) invaded and their rights violated. Their compromised PII was private and sensitive in nature, was disclosed to a third-party vendor, and was disseminated to the members of the public who used it to harm Plaintiff and Class members.

***Security Breaches Lead to Identity Theft***

22.     Identity theft occurs when a person's PII, such as the person's name, e-mail address, address, Social Security number, billing and shipping addresses, phone number and credit card information, is used or attempted to be used without his or her permission to commit fraud or other crimes.[1]

23.     According to the Federal Trade Commission ("FTC"), "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions" and "any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[2] Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute [PII]."[3]

---

[1] *See* FTC, *Identity Theft*, available at http://www.consumer.ftc.gov/features/feature-0014-identity-theft (last visited May 8, 2014).

[2] FTC Report, *Protecting Consumer Privacy in an Era of Rapid Change*, 8 (March 2012), available at http://www.ftc.gov/os/2012/03/120326privacyreport.pdf (last visited May 8, 2014).

[3] FTC Report, *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers*, *Preliminary FTC Staff Report*, 35–38 (Dec. 2010), available at http://www.ftc.gov/os/2010/12/101201privacyreport.pdf (last visited May 8, 2014); *Comment of Center for Democracy & Technology,* cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11–12.

24.     The FTC estimates that the identities of as many as 9 million Americans are stolen each year.[4] Because Plaintiff's and Class members' Social Security numbers were made publicly available, they face a significantly heightened risk of identity theft, identity fraud, and medical fraud.  In fact, as detailed herein, Plaintiff has already been a victim of identity theft, identity fraud, and medical fraud.

25.     Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, released a 2012 Identity Fraud Report (the "Javelin Report"), quantifying the impact of security breaches.  According to the Javelin Report, individuals whose PII is subject to a reported security breach—such as the Security Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft.

26.     According to the FTC, victims of identity theft are at serious risk of substantial losses.  "Once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance. An identity thief can file a tax refund in your name and get your refund.  In some extreme cases, a thief might even give your name to the police during an arrest."[5]

27.     The FTC also warns consumers about medical identity theft. "A thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care.  If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[6]

---

[4] *Id.*

[5] *See* FTC, *Signs of Identity Theft*, available at http://www.consumer.ftc.gov/articles/0271-signs-identity-theft (last visited May 8, 2014).

[6] *See* FTC, *Medical Identity Theft*, available at http://www.consumer.ftc.gov/articles/0171-medical-identity-theft (last visited May 8, 2014).

28.     Identity thieves also use Social Security numbers to commit other types of fraud. The Government Accounting Office (GAO) found that identity thieves use PII to open financial accounts and payment card accounts and incur charges in a victim's name.[7] This type of identity theft can be the most damaging because it may take some time for the victim to become aware of the theft, while in the meantime causing significant harm to the victim's credit rating and finances. Moreover, unlike other PII, Social Security numbers are incredibly difficult to change and their misuse can continue for years into the future.

29.     Identity thieves also use Social Security numbers to obtain false identification cards, obtain government benefits in the victim's name, commit crimes, and, as occurred here, file fraudulent tax returns to pilfer the victims' tax refunds. Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments, and obtain medical services in the victim's name. Identity thieves also have been known to give a victim's personal information to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record. The GAO states that victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."[8]

30.     The unauthorized disclosure of a person's Social Security number can be particularly damaging, because Social Security numbers cannot be easily replaced like a credit card or debit card.  In order to obtain a new Social Security number, a person must show evidence that someone is using the number fraudulently, as well as show that he has done all he

---

[7] *See* http://www.gao.gov/new.items/d07737.pdf (last visited May 8, 2014).

[8] *See* http://www.gao.gov/new.items/d09759t.pdf (last visited May 21, 2014).

can to fix the problems resulting from the misuse.[9] Thus, individuals whose PII has been stolen cannot obtain a new Social Security number until the damage has already been done and they have shown they have done all they can to fix the problems.

31. What is more, obtaining a new Social Security number is not an absolute prevention against continued identity theft. Government agencies, private businesses, and credit reporting companies likely still have the person's records under the old number, so the effects of the identity theft may persist long after the incident. For some victims of identity theft, a new number may actually create more problems. Because prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

32. Plaintiff's and Class members' PII is a valuable commodity to identity thieves. Once personally identifiable information, such as Plaintiff's and Class members' PII, has been compromised, criminals often trade the information on the "cyber black market" for a number of years.[10] Identity thieves and other cyber criminals openly post stolen credit card numbers, Social Security numbers, and other personal financial information on various Internet websites, thereby making the information publicly available. In one study, researchers found hundreds of websites displaying stolen personal financial information. Strikingly, none of these websites was blocked by Google's safeguard filtering mechanism—the "Safe Browsing list." The study concluded:

> It is clear from the current state of the credit card black-market that cyber criminals can operate much too easily on the Internet. They are not afraid to put out their email addresses, in some cases phone numbers and other credentials in their advertisements. It seems that the black market for

---

[9]*See* Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007, ICN 46327, available at http://www.ssa.gov/pubs/10064.html (last visited May 8, 2014).

[10] Companies, in fact, also recognize PII as an extremely valuable commodity akin to a form of personal property. *See* T. Soma, *et al*, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, 3–4 (2009).

cyber criminals is not underground at all. In fact, it's very "in your face."[11]

### Damages Sustained by Plaintiff and Class Members

33.     The Security Breach was a direct and foreseeable result of Defendant's failure to adopt and maintain reasonable and industry-standard security measures to safeguard and protect Plaintiff's and Class members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law duties.

34.     Defendant's wrongful actions and inaction directly and foreseeably caused the theft and dissemination into the public domain of Plaintiff's and Class members' PII without their knowledge, authorization, and consent. As a direct and foreseeable result of Defendant's wrongful actions and inaction and the Security Breach, Plaintiff and Class members have suffered, and will continue to suffer, economic damages and other actual harm including, without limitation: (i) economic losses as a result of identity theft, identity fraud, and medical fraud; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) reasonable out-of-pocket expenses incurred to remedy identity theft, identity fraud, and medical fraud and to mitigate the increased risk of identity theft, identity fraud, and medical fraud pressed upon them by the Security Breach; (v) anxiety and emotional distress; and/or (vi) the value of their time spent mitigating the effects of identity theft, identity fraud, and medical fraud and/or the increased risk of identity theft, identity fraud, and medical fraud—for which they are entitled to compensation.

35.     As a result of the Security Breach, a thief or thieves submitted to the Internal Revenue Service a fraudulent Income Tax Return for 2013 in Plaintiff's name. Plaintiff has spent time and has incurred, and likely will in the future incur additional, out-of-pocket expenses for

---

[11]     StopTheHacker, *The "Underground" Credit Card Blackmarket*, available at http://www.stopthehacker.com/2010/03/03/the-underground-credit-card-blackmarket/ (last visited May 8, 2014).

accountant/tax preparer services in order to challenge and remedy the fraudulent Income Tax Return. Plaintiff has also been damaged financially by the related delay in receiving her tax refund for 2013.

36.     Plaintiff has also been damaged by fraudulent T-Mobile charges and medical charges in her name. Plaintiff had to take the time to file a police report, obtain a copy of her Social Security card, and make calls in order to challenge the fraudulent charges.

### CLASS ACTION ALLEGATIONS

37.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action as a class action individually and on behalf of the following Class of similarly situated individuals:

> All persons whose personally identifiable information ("PII") was provided to Combined Insurance in connection with insurance policies purchased from Combined Insurance during the period of time from March 2010 to March 2012 and whose PII was stored on an Internet server without proper security measures, including each person to whom Combined Insurance sent a letter notifying them of the security breach.

Excluded from the Class are (i) Defendant and its owners, officers, directors, employees, agents, and representatives and its parent entities, subsidiaries, affiliates, successors, and assigns; and (ii) the Court, Court personnel, and members of their immediate families.

38.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that joinder of the Class members would be impracticable. Based upon the two-year period of time when the relevant insurance policies were purchased, Class members are believed to number in at least the hundreds or more. The precise number of Class members is presently unknown to Plaintiff, but may be ascertained from Defendant's records.  Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

39.    **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over any potential question that affects only individual Class members. Such common questions of law or fact include, inter alia:

a)  whether Defendant willfully or negligently violated FCRA by failing to adopt and maintain reasonable security measures to limit the dissemination of Plaintiff's and Class members' PII to permissible purposes under 15 U.S.C. § 1681b;

b)  whether Defendant violated the Illinois Insurance Code by failing to properly secure Plaintiff's and Class members' PII;

c)  whether Defendant's violation of the Illinois Insurance Code constitutes negligence per se;

d)  whether Defendant willfully, recklessly, and/or negligently failed to adopt and maintain reasonable procedures designed to prevent unauthorized access to Plaintiff's and Class members' PII;

e)  whether Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in storing and maintaining their PII;

f)  whether Defendant breached its duty to exercise reasonable care in storing and maintaining Plaintiff's and Class members' PII;

g)  whether Defendant owed a fiduciary duty to Plaintiff and Class members and whether Defendant breached that duty;

h)  whether Defendant breached its contract with Plaintiff and Class members;

i)  whether Defendant breached an implied contract with Plaintiff and Class members;

j)  whether Defendant was unjustly enriched to the detriment of Plaintiff and Class members;

k)  whether by publicly disclosing Plaintiff's and Class members' PII without authorization, Defendant invaded Plaintiff's and Class members' privacy; and

l)  whether Plaintiff and the other members of the Class are entitled to damages, injunctive relief, and other equitable relief, and the measure of such damages and relief.

Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, individually and on behalf of the other Class members. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

40. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of Class members' claims in that Plaintiff's claims and Class members' claims all arise from Defendant's failure to properly safeguard and protect Plaintiff's and Class members' PII and the resulting Security Breach. Further, there are no defenses available to Defendant unique to Plaintiff.

41. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff and her counsel will fairly and adequately represent the interests of Class members. Plaintiff has no interests antagonistic to, or in conflict with, Class members' interests. Additionally, Plaintiff's attorneys are highly experienced in the prosecution of consumer class actions, including security breach class actions, and intend to vigorously prosecute this action on behalf of Plaintiff and Class members.

42. **Insufficiency of Separate Actions—Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

43. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class as a whole.

44. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to other available means for fairly and efficiently adjudicating this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. Additionally, the damages and other detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to bear the burden and expense of such inefficiency. Individualized litigation would also create the potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I

### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT

45. Plaintiff repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

46. FCRA defines a "consumer reporting agency" as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third

parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

47.    FCRA defines a "consumer report" as:

[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under [15 U.S.C. §] 1681(b).

15 U.S.C. § 1681a(d)(1).

48.    FCRA defines "medical information" as:

[I]nformation or data, whether oral or recorded, in any form or medium, created by or derived from a health care provider or the consumer, that relates to—(A) the past, present, or future physical, mental, or behavioral health or condition of an individual; (B) the provision of health care to an individual; or (C) the payment for the provision of health care to an individual.

15 U.S.C. § 1681a(i).

49.    FCRA specifically protects medical information, restricting its dissemination to limited instances. *See, e.g.*, 15 U.S.C. §§ 1681a(d)(3); 1681b(g); 1681c(a)(6).

50.    Defendant is a Consumer Reporting Agency under FCRA. On a cooperative nonprofit basis and/or for monetary fees, Defendant regularly assembles consumer information including, among other things, insurance policy information, such as names, dates of birth, and Social Security Numbers of those insured; claims information, such as the date of loss, type of loss, and amount paid for claims submitted by an insured; and a description of insured items. Defendant also regularly utilizes interstate commerce to furnish such information/PII on consumers (consumer reports) to third parties, including the Medical Information Bureau.

15

51.     Plaintiff's and the other Class members' PII, including their enrollment and premium information, constitute Consumer Reports under FCRA, because this information bears on, among other things, their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, physical/medical conditions, and mode of living, and is used or collected, in whole or in part, for the purpose of establishing Plaintiff's and the other Class members' eligibility for insurance to be used primarily for personal, family, or household purposes.

52.     FCRA requires the adoption of reasonable procedures with regard to, inter alia, the confidentiality and proper utilization of personal and insurance information. 15 U.S.C. § 1681(b). FCRA also requires that: "Every consumer reporting agency shall maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e.

53.     Defendant failed to adopt and maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b.

54.     Plaintiff's and Class members' PII, in whole or in part, constitutes medical information as defined by FCRA. The PII included enrollment and premium information, which constitute data relating to the provision of, and payment for, health care under FCRA's definition of medical information. *See* 15 U.S.C. § 1681a(i). Defendant's consumer reports provided to the Medical Information Bureau also contained information regarding the past, present, or future physical, mental, or behavioral health or condition of an individual.

55.     Defendant's violation of FCRA, as set forth above, was willful or, at the very least, reckless, constituting willfulness.

56.     As a result of Defendant's willful and/or reckless failure to adopt and maintain

reasonable procedures to limit the furnishing of Plaintiff's and Class members' PII to the purposes listed under 15 U.S.C. § 1681b, Plaintiff's and the other Class members' PII was made accessible to unauthorized third parties in the public domain, compromised, and stolen. Plaintiff suffered individual harm as a result of Defendant's willful and/or reckless violations of FCRA.

57.     As a further direct and/or proximate result of Defendant's willful and/or reckless violations of FCRA, as described above, Plaintiff and the other Class members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described in detail above.

58.     Plaintiff and the other Class members, therefore, are entitled to compensation for their actual damages or statutory damages of not less than $100, and not more than $1,000, each, as well as attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C. § 1681n(a).

## COUNT II

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT

59.     Plaintiff repeats and re-alleges paragraphs 1 through 54 as if fully set forth herein.

60.     Defendant negligently failed to adopt and maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b.

61.     Plaintiff's and the other Class members' PII was wrongfully disseminated to the public as a direct and foreseeable result of Defendant's failure to adopt and maintain such reasonable procedures.

62.     As a direct and/or proximate result of Defendant's negligent violations of FCRA, as described above, Plaintiff's and the other Class members' PII was made accessible to unauthorized third parties in the public domain, compromised, and stolen. Plaintiff suffered

17

individual harm as a result of Defendant's negligent violations of FCRA.

63.     As a further direct and/or proximate result of Defendant's negligent violations of FCRA, as described above, Plaintiff and the other Class members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described in detail above.

64.     Plaintiff and the other Class members, therefore, are entitled to compensation for their actual damages, as well as attorneys' fees, litigation expenses, and costs, pursuant to 15 U.S.C. § 1681o(a).

## COUNT III

## VIOLATION OF THE ILLINOIS INSURANCE CODE

65.     Plaintiff repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

66.     Pursuant to 215 Ill. Comp. Stat. 5/1002, the obligations imposed by Article XL of the Insurance Information and Privacy Protection portion of the Illinois Insurance Code applies to "insurance institutions . . .  [that] collect, receive or maintain information in connection with insurance transactions."  Defendant here is an "insurance institution" for purposes of the Code.

67.     Plaintiff's and Class members' PII made available to the public fall within the definition of "Personal Information," as defined in 215 Ill. Comp. Stat. 5/1003, and as used in Article XL of the Insurance Information and Privacy Protection portion of the Illinois Insurance Code.

68.     An insurance institution shall not disclose any personal information about an individual collected or received in connection with an insurance transaction without a valid written request submitted by an authorized individual and/or agency, subject to exceptions inapplicable here.  215 Ill. Comp. Stat. 5/1014.

69.     Defendant, by allowing Plaintiff's and Class members' PII to become accessible and available via the Internet, as described above, violated the Insurance Information and Privacy Protection portion of the Illinois Insurance Code, because the Security Breach was not pursuant to a valid, written request submitted by an authorized individual and/or agency and/or in accordance with 215 Ill. Comp. Stat. 5/1014.

70.     As a result of Defendant's violation of Article XL of the Insurance Information and Privacy Protection portion of the Illinois Insurance Code (215 Ill. Comp. Stat. 5/Art. XL), Plaintiff and the Class suffered and will continue to suffer actual damages.

**COUNT IV**

**<u>NEGLIGENCE PER SE</u>**

71.     Plaintiff repeats and re-alleges paragraphs 1 through 44 and 65 through 70 as if fully set forth herein.

72.     Defendant's violation of Article XL of the Insurance Information and Privacy Protection portion of the Illinois Insurance Code (215 Ill. Comp. Stat. 5/Art. XL), resulted in injury to Plaintiff and the Class.

73.     Article XL of the Insurance Information and Privacy Protection portion of the Illinois Insurance Code was enacted in order to, inter alia, limit the disclosure of information collected in connection with insurance transactions. 215 Ill. Comp. Stat. 5/1001.

74.     The statute was designed to protect the class of persons to which Plaintiff and the Class members belong against the unauthorized disclosure of their PII.

75.     As a result of Defendant's violation of Article XL of the Insurance Information and Privacy Protection portion of the Illinois Insurance Code (215 Ill. Comp. Stat. 5/Art. XL), Plaintiff and the Class suffered and will continue to suffer actual damages.

## COUNT V

## <u>NEGLIGENCE</u>

76.     Plaintiff repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

77.     Defendant had a duty to exercise reasonable care and caution in storing and maintaining Plaintiff's and Class members' PII.

78.     Defendant violated its duty by failing to adopt and maintain reasonable and appropriate safeguards and security protocols to ensure that Plaintiff's and Class members' PII was not disclosed to unauthorized third parties.

79.     Defendant's wrongful actions and inaction constituted negligence.

80.     It was reasonably foreseeable that Defendant's failure to exercise reasonable care and caution in safeguarding and protecting Plaintiff's and Class members' PII would result in an unauthorized third party gaining access to such information for an unlawful purpose.

81.      Plaintiff and Class members were (and continue to be) damaged as a direct and proximate result of Defendant's failure to secure and protect their PII.

82.     But for Defendant's failure to exercise reasonable care, Plaintiff's and the other Class members' PII would not have been stored on an unsecure Internet server and made publicly available for approximately 16 months, and Plaintiff and Class members would not have suffered damages relating to same.

## COUNT VI

## <u>BREACH OF FIDUCIARY DUTY</u>

83.     Plaintiff repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

84.     Plaintiff and Class members placed their trust and confidence upon Defendant with regard to the handling, maintenance, and disposition of their confidential PII. Therefore,

20

Defendant owed a fiduciary duty to Plaintiff and Class members to secure and protect the PII with which it was entrusted.

85.     Defendant breached its fiduciary duty to Plaintiff and Class members by failing to safeguard and ensure the confidentiality and security of Plaintiff's and Class members' PII.

86.     As a proximate result of Defendant's breach of fiduciary duty, Plaintiff and Class members suffered and will continue to suffer actual damages.

## COUNT VII

## **BREACH OF CONTRACT**

87.     Plaintiff repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

88.     Plaintiff and members of the Class entered into contracts with Combined Insurance; Combined Insurance received insurance premiums in exchange for providing insurance coverage and its promises to protect their PII.

89.     Combined Insurance promised to protect Plaintiff's and Class members' PII in its written "Privacy Pledge" to its customers. In a document titled "Our Privacy Pledge to You," Combined Insurance states that "we maintain physical, electronic and procedural safeguards that comply with federal regulations to guard your personal information." It also states that "we restrict access to your personal information to those employees who need to know such information."

90.     Combined Insurance did not maintain physical, electronic and procedural safeguards in compliance with federal regulations, including FCRA, and it did not restrict access to Plaintiff's and Class members' personal information to those employees who need to know such information, as Plaintiff's and Class members' PII was left unsecured and unprotected for approximately 16 months on a server accessible to anyone with an Internet connection.

91.     Defendant's failure to meet these promises and obligations in its "Privacy Pledge" constitutes a breach of contract.

92.     As a result of Defendant's breach of contract, Plaintiff and the Class suffered and will continue to suffer actual damages.

**COUNT VIII**

**BREACH OF IMPLIED CONTRACT**

93.     Plaintiff repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

94.     Plaintiff pleads this count in the alternative to the breach of contract count.

95.     In order to sign up for Defendant's insurance, Plaintiff and Class members provided their PII to Defendant.

96.     In exchange for insurance coverage for Plaintiff and Class members, Defendant received insurance premiums.

97.     By Plaintiff and Class members providing their PII and Defendant accepting their PII and insurance premiums, the parties entered into implied contracts that Defendant would safeguard and protect Plaintiff's and Class members' PII.

98.     Defendant breached the implied contract, because it failed to safeguard and protect Plaintiff's and Class members' PII, as the PII was left unsecured and unprotected for approximately 16 months on a server accessible to anyone with an Internet connection.

99.     As a result of Defendant's breach of implied contract, Plaintiff and Class members suffered and will continue to suffer actual damages.

**COUNT IX**

**UNJUST ENRICHMENT**

100.     Plaintiff repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

22

101. Plaintiff pleads this count in the alternative to the breach of contract and breach of implied contract counts.

102. A monetary benefit was conferred on Defendant in that it was paid premiums for the insurance policies under which Plaintiff and Class members were, and in some cases still are, covered. A portion of the insurance premiums paid was to fund adequate, reasonable, and proper measures of PII protection, which Defendant had a duty to provide but failed to provide, to the detriment of Plaintiff and Class members.

103. Defendant has received, and in some cases continues to receive, the payment of insurance premiums for insurance coverage for Plaintiff and Class members.

104. A portion of the insurance premiums paid were for the costs of data security and management in accordance with the law and industry standards.

105. It would be unjust for Defendant to retain the portion of the insurance premiums paid for the costs of data security and management, because Defendant failed to secure and protect Plaintiff's and Class members' PII in accordance with the law and industry standards.

106. As a result of Defendant's unjust enrichment, Plaintiff and the Class suffered and will continue to suffer actual damages.

## COUNT X

### INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

107. Plaintiff repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

108. Defendant's failure to secure and protect Plaintiff's and Class members' PII directly resulted in the public disclosure of such private information. For approximately 16 months, Plaintiff's and Class members' PII was openly posted on the Internet or otherwise freely available to the public over the Internet.

23

109.     Plaintiff's and Class members' PII is not of a legitimate public concern; publicity of their PII would be, is, and will continue to be offensive to reasonable people.

110.     Plaintiff and Class members were (and continue to be) damaged as a direct and proximate result of Defendant's invasion of their privacy by publicly disclosing their PII. Plaintiff and the Class members are entitled to actual damages directly and/or proximately caused by the public disclosure of private information, and nominal damages.

111.     Defendant's wrongful actions and inaction (as described above) constituted (and continue to constitute) an invasion of Plaintiff's and Class members' privacy by publicly disclosing their PII.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, seeks a judgment order against Defendant:

A.  certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel to represent the Class;

B.  finding in favor of Plaintiff and the Class on all counts asserted herein;

C.  awarding damages, including punitive damages, in an amount to be determined by the Court or a jury;

D.  awarding prejudgment interest on all amounts awarded;

E.  providing for restitution and all other applicable forms of equitable monetary relief;

F.  providing for appropriate injunctive relief;

G.  awarding a reasonable incentive award to the appointed Class representative;

H.  awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit; and

I.  awarding such further relief as the Court deems just and appropriate.

24

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, respectfully demands a trial by jury on all claims and causes of action so triable.

Dated:  May 22, 2014                                Respectfully submitted,

                                                    /s/  Ben Barnow
                                                    One of the Attorneys for Plaintiff

                                                    Ben Barnow
                                                    Sharon Harris
                                                    Erich P. Schork
                                                    BARNOW AND ASSOCIATES, P.C.
                                                    One N. LaSalle Street, Ste. 4600
                                                    Chicago, IL 60602
                                                    Telephone: (312) 621-2000
                                                    Facsimile: (312) 641-5504
                                                    Email: b.barnow@barnowlaw.com
                                                    Email: s.harris@barnowlaw.com
                                                    Email: e.schork@barnowlaw.com

                                                    *Of Counsel:*

                                                    Ralph K. Phalen (*pro hac vice* motion to be filed)
                                                    RALPH K. PHALEN LAW, P.C.
                                                    1000 Broadway Ste. 400
                                                    Kansas City Mo. 64105
                                                    Telephone: 816-589-0753
                                                    Facsimile: 816-471-1701
                                                    Email: phalenlaw@yahoo.com

                                                    Mitchell L. Burgess (*pro hac vice* motion to be filed)
                                                    BURGESS & LAMB, P.C.
                                                    1000 Broadway, Suite 400
                                                    Kansas City, MO 64105
                                                    Telephone: (816) 471-1700
                                                    Facsimile: (816) 471-1701
                                                    Email: mitch@burgessandlamb.com