**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANNE DOLMAGE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No: 14-CV-3809 |
| | Honorable Ruben Castillo |
| COMBINED INSURANCE COMPANY OF AMERICA, an Illinois corporation, | |
| Defendant. | |

## PLAINTIFF'S OPPOSITION TO COMBINED INSURANCE COMPANY OF AMERICA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Ben Barnow
Sharon Harris
Erich P. Schork
Barnow and Associates, P.C.
One N. LaSalle Street, Ste. 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Email: b.barnow@barnowlaw.com
Email: s.harris@barnowlaw.com
Email: e.schork@barnowlaw.com

Ralph K. Phalen (admitted *pro hac vice*)
Ralph K. Phalen Law, P.C.
1000 Broadway, Ste. 400
Kansas City, MO 64105
Telephone: (816) 589-0753
Email: phalenlaw@yahoo.com

Mitchell L. Burgess (admitted *pro hac vice*)
Burgess & Lamb, P.C.
1000 Broadway, Ste. 400
Kansas City, MO 64105
Telephone: (816) 471-1700
Email: mitch@burgessandlamb.com

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................1

LEGAL STANDARD .............................................................................................2

ARGUMENT ..........................................................................................................3

    I.    Ms. Dolmage's FCRA Claims are Well Pled...............................................3

        A.   Combined Insurance is a Consumer Reporting Agency under FCRA ......................3

        B.   PII Constitutes a Consumer Report under FCRA ....................................5

        C.   Ms. Dolmage Was Not Required to Allege that Combined Insurance Provided Information Directly to Criminals................................6

    II.   Ms. Dolmage Adequately Alleges a Violation of the Illinois Insurance Code and Negligence Per Se ...............................................................8

    III.  Ms. Dolmage States a Claim for Negligence .............................................9

        A.   Combined Insurance Owed a Duty of Ordinary Care to Ms. Dolmage .................10

        B.   Combined Insurance's Negligence Was the Proximate Cause of Ms. Dolmage's Injuries ..............................................................11

    IV.  Ms. Dolmage States a Claim for Breach of Fiduciary Duty...........................12

    V.   Ms. Dolmage States a Claim for Breach of Express Contract .......................12

    VI.  Ms. Dolmage States a Claim for Breach of Implied Contract........................13

    VII. Ms. Dolmage States a Claim for Unjust Enrichment ..................................14

    VIII. Ms. Dolmage States a Claim for Public Disclosure of Private Facts .............14

CONCLUSION.......................................................................................................15

i

## TABLE OF AUTHORITIES

<u>Cases</u>

*Adams v. LexisNexis Risk & Info. Analytics Group, Inc.*,
  No. 08-4708, 2010 WL 1931135 (D.N.J. May 12, 2010) ........................................................4, 5

*Bergman v. Kelsey*,
  313 Ill. Dec. 862, 873 N.E.2d 486 (1st Dist. 2007) ...................................................................10

*Bormes v. United States*,
  __ F.3d __, 2014 WL 3583937 (7th Cir. July 22, 2014) ...........................................................7

*Chandler v. Ill. Cent. R.R. Co.*,
  207 Ill. 2d 331, 798 N.E.2d 724 (2003) ...................................................................................10

*Cooney v. Chi. Pub. Schs.*,
  407 Ill. App. 3d 358, 943 N.E.2d 23 (1st Dist. 2010) ...........................................................10, 15

*DiLorenzo v. Valve and Primer Corp.*,
  347 Ill. App. 3d 194, 807 N.E.2d 673 (1st Dist. 2004) ...........................................................12

*Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*,
  2012 IL 112479, 973 N.E.2d 880 (2012) ...................................................................................10

*Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*,
  115 Ill. 2d 482, 505 N.E.2d 314 (1987) ...................................................................................13

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ........................................................................................................................3

*Ford-Sholebo v. United States*,
  980 F. Supp. 2d 917 (N.D. Ill. 2013) .........................................................................................10

*Halloran v. Dickerson*,
  287 Ill. App. 3d 857, 679 N.E.2d 774 (5th Dist. 1997) ...........................................................12

*Holmes v. Countrywide Fin. Corp.*,
  No. 5:08-CV-00205-R, 2012 WL 2873892 (W.D. Ky. July 12, 2012) ....................................7, 8

*Hooper v. Cnty. of Cook*,
  366 Ill. App. 3d 1, 851 N.E.2d 663 (1st Dist. 2006) .................................................................10

*HPI Health Care Servs., Inc. v. Mount Vernon Hosp., Inc.*,
  131 Ill. 2d 145, 545 N.E.2d 672 (1989) ...................................................................................14

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. Jan. 21, 2014).................................................7, 8

*Johnson v. Kmart Corp.*,
  311 Ill. App. 3d 573, 723 N.E.2d 1192 (1st Dist. 2000)..........................................15

*Khan v. Deutsche Bank AG*,
  2012 IL 112219, 365 Ill. Dec. 517, 978 N.E.2d 1020 (2012) ......................................12

*Lewis v. Ohio Prof'l Elec. Network LLC*,
  190 F. Supp. 2d 1049 (S.D. Ohio 2002)....................................................................4

*McCauley v. City of Chi.*,
  671 F.3d 611 (7th Cir. 2011) ...............................................................................3

*Murray v. Chi. Youth Ctr.*,
  224 Ill. 2d 213, 864 N.E.2d 176 (2007) ...................................................................9

*Noyola v. Bd. of Educ. of the City of Chi.*,
  179 Ill. 2d 121, 688 N.E.2d 81 (1997) ....................................................................9

*Ori v. Fifth Third Bank*,
  674 F. Supp. 2d 1095 (E.D. Wis. 2009) ...................................................................4

*Raintree Homes, Inc. Vill. of Long Grove*,
  209 Ill. 2d 248, 807 N.E.2d 439 (2004) .................................................................14

*Reno v. Am. Civil Liberties Union*,
  521 U.S. 844 (1997)........................................................................................15

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) ...........................................................................14

*Rowe v. UniCare Life and Health Ins. Co.*,
  No. 09 C 2286, 2010 WL 86391 (N.D. Ill. Jan. 5, 2010)................................4, 5, 6, 15

*Strautins v. Trustwave Holdings, Inc.*,
  No. 12 C 09115, 2014 WL 960816 (N.D. Ill. Mar. 12, 2014)......................................7

*Tamayo v. Blagojevich*,
  526 F.3d 1074 (7th Cir. 2008) .........................................................................2, 3

*Trans Union Corp. v. Federal Trade Comm'n*,
  245 F.3d 809 (D.C. Cir. 2001)............................................................................5

*U.S. v. Andrulonis*,
476 Fed. App'x 379 (11th Cir. 2012) ...................................................................12

*Willingham v. Global Payments, Inc.*,
No. 1:12-CV-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013).......................8

*Wolfe v. MBNA Am. Bank*,
485 F. Supp. 2d 874 (W.D. Tenn. 2007).................................................................12

*Yath v. Fairview Clinics, N.P.*,
67 N.W.2d 34 (Minn. Ct. App. 2009) ....................................................................15

Statutory Authority and Federal Rules

Fed. R. Civ. P. 8(a)(2) ...............................................................................................2

Fed. R. Civ. P. 12(b)(6) .............................................................................................3

15 U.S.C. § 1681 *et seq*............................................................................................1

15 U.S.C. § 1681(b) ...................................................................................................3

15 U.S.C. § 1681a(d) .................................................................................................5

15 U.S.C. § 1681a(f) ..................................................................................................4

15 U.S.C. § 1681b ..............................................................................................5, 6, 7

15 U.S.C. § 1681e(a) .........................................................................................6, 7, 8

215 Ill. Comp. Stat. 5/1001 *et seq*...........................................................................1

215 Ill. Comp. Stat. 5/1003(J)................................................................................8, 9

215 Ill. Comp. Stat. 5/1003(S).....................................................................................8

215 Ill. Comp. Stat. 5/1014 ....................................................................................8, 9

215 Ill. Comp. Stat. 5/1021(B).....................................................................................9

Miscellaneous Authority

*Webster's Third New International Dictionary* 645 (1986) .........................................9

**INTRODUCTION**

Plaintiff Anne Dolmage ("Ms. Dolmage") suffered tax return fraud, identity theft, and medical identity theft as a result of defendant Combined Insurance Company of America's ("Combined Insurance") failure to implement and maintain reasonable and industry-standard safeguards to secure the personally identifiable information of certain of its insured, including Ms. Dolmage, entrusted to it. As detailed herein, Ms. Dolmage's Class Action Complaint sufficiently alleges claims under the Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681 *et seq.*), the Illinois Insurance Code (215 Ill. Comp. Stat. 5/1001 *et seq.*), negligence, negligence per se, breach of fiduciary duty, breach of contract, breach of implied contract, unjust enrichment, and public disclosure of private facts. Respectfully, Combined Insurance's motion to dismiss should be denied.

**STATEMENT OF FACTS**

Combined Insurance offers various insurance coverage products. Compl. ¶¶ 10, 12. In June 2011, Ms. Dolmage purchased insurance coverage from Combined Insurance through her employer, Dillard's. Compl. ¶¶ 4, 9. As her insurer, Combined Insurance acquired and was entrusted with Ms. Dolmage's personally identifiable information and certain private and confidential medical information. Compl. ¶¶ 9, 15.

Combined Insurance failed to take reasonable, industry-standard security measures to protect, secure, and safeguard Ms. Dolmage's and certain other insured's ("Class members") personally identifiable information, including names, addresses, dates of birth, Social Security numbers, and insurance enrollment and premium information (collectively, "PII"). Compl. ¶¶ 1–2, 20. As a result, Ms. Dolmage's and other Class members' PII was improperly stored on an unsecure Internet server maintained by a third-party vendor for approximately 16 months (the

1

"Security Breach"). Compl. ¶¶ 1, 18. During this time period, Mr. Dolmage's and other Class members' PII was publically accessible to anyone with an Internet connection. Compl. ¶ 1. On July 26, 2013, Combined Insurance sent a letter to Ms. Dolmage notifying her that her PII had been stored on a server maintained by a third-party enrollment system vendor from March 2012 to July 2013, without proper security measures. Compl. ¶¶ 13, 16.

As a direct and foreseeable result of Combined Insurance's failure to maintain reasonable safeguards to protect Ms. Dolmage's PII, a fraudulent income tax return for 2013 was filed in Ms. Dolmage's name, she experienced medical identity theft, and a fraudulent cell phone account was opened in her name. Compl. ¶¶ 35–36. As a result of the tax return fraud, Ms. Dolmage was forced to incur expenses in obtaining professional services to remedy the fraud and suffered from the attendant delay in receiving money to which she was entitled. Compl. ¶ 35. Additionally, as a result of the identity theft and medical identity theft that she suffered, Ms. Dolmage was forced to spend time to file a police report, obtain a copy of her Social Security card, and make calls to contest the fraudulent charges attributed to her. Compl. ¶ 36.

As of April 15, 2014, Dillards reported having received at least 30 claims from employees that were victims of fraudulent activity. Compl. ¶ 4. Despite this fact, Combined Insurance has provided for Ms. Dolmage and others like her an insufficient and inadequate one-year subscription to credit monitoring services provided by Experian. Compl. ¶ 18.

## LEGAL STANDARD

To state a claim for relief, a pleading need only contain a short and plain statement of the claims alleged showing that the pleader is entitled to relief and which is sufficient to provide a defendant with fair notice of the claims alleged and the bases of such claims. *See* Fed. R. Civ. P. 8(a)(2); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "[S]pecific facts are not

necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). To avoid dismissal under Rule 12(b)(6), the complaint must state a claim to relief that is "plausible on its face." *McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When reviewing a 12(b)(6) motion to dismiss, the Court must construe a plaintiff's complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

## **ARGUMENT**

### I.     **Ms. Dolmage's FCRA Claims are Well Pled**

FCRA serves to ensure that entities regularly collecting and transmitting consumer information "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Ms. Dolmage alleges facts supporting that Combined Insurance violated FCRA when it failed to maintain reasonable procedures designed to limit the furnishing of Ms. Dolmage's and other Class members' PII to permissible purposes under FCRA.

#### A.     **Combined Insurance Is a Consumer Reporting Agency under FCRA**

Combined Insurance is wrong in asserting that it does not fall within FCRA's definition of a Consumer Reporting Agency. FCRA defines the term Consumer Reporting Agency as follows:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility

3

of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

Ms. Dolmage alleges that on a cooperative basis and/or for monetary consideration Combined Insurance regularly assembles consumer information, including, among other things, insurance policy information, such as names, dates of birth, and Social Security Numbers of those insured; claims information, such as the date of loss, type of loss, and amount paid for claims submitted by an insured; and a description of insured items. Compl. ¶ 50. Ms. Dolmage also alleges that Combined Insurance regularly uses interstate commerce to furnish such consumer information to third parties, including the Medical Information Bureau. *Id.* Nothing more is required at this stage.

Combined Insurance ignores these allegations. Instead, it asserts that it cannot be a Consumer Reporting Agency under FCRA because it is an insurance provider. Federal courts and the Federal Trade Commission have declined to adopt such a strained interpretation of the statute, but have looked to an entity's activities when determining whether such entity is a Consumer Reporting Agency under FCRA. *See Rowe v. UniCare Life and Health Ins. Co.*, No. 09 C 2286, 2010 WL 86391, at *3 (N.D. Ill. Jan. 5, 2010) (plaintiff stated claims against an insurance company under FCRA) (Exhibit A); *Ori v. Fifth Third Bank*, 674 F. Supp. 2d 1095, 1098 (E.D. Wis. 2009) (defendant who collected, processed, and transmitted mortgage information was a furnisher, a consumer reporting agency, and a reseller); *Adams v. LexisNexis Risk & Info. Analytics Group, Inc.*, No. 08-4708, 2010 WL 1931135, at *5–10 (D.N.J. May 12, 2010) (finding the plaintiffs' allegations sufficient to support that LexisNexis is a consumer reporting agency under FCRA) (Exhibit B); *Lewis v. Ohio Prof'l Elec. Network LLC*, 190 F. Supp. 2d 1049, 1058 (S.D. Ohio 2002) (finding Michigan Sheriff's Jail Linkage System to be a

consumer reporting agency under FCRA); *see also* Stipulated Final Judgment and Order for Civil Penalties, Permanent Injunction, and Other Equitable Relief, *United States v. Certegy Check Services, Inc.*, No. 1:13-cv-01247 (D.D.C. Aug. 15, 2013) (check-authorization service agreeing to pay $3.5 million to settle Federal Trade Commission charges that it is a Consumer Reporting Agency and violated FCRA) (Exhibit C). The same result is appropriate here.

### B. PII Constitutes a Consumer Report under FCRA

"FCRA specifically contemplates the possibility that some of the protected information contained in consumer reports may be 'medical information.'" *Rowe*, 2010 WL 86391, at *3 (quoting 15 U.S.C. § 1681a(d)(3)). To qualify as a Consumer Report under FCRA, information must: (1) "bear on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," *Adams v. LexisNexis Risk & Info. Analytics Group, Inc.*, No. 08-4708, 2010 WL 1931135, at *6 (D.N.J. May 12, 2010) (quoting 15 U.S.C. § 1681a(d)(1)); and (2) "be used or expected to be used for the purpose of serving as a factor in establishing the consumer's eligibility for credit, insurance, or employment purposes or any of the permissible purposes outlined in [15 U.S.C. 1681b]". *Id.* at *7.

Courts recognize FCRA's definition of Consumer Report "'does not seem very demanding, for almost any information about consumers arguably bears on their personal characteristics or mode of living.'" *See Adams*, 2010 WL 1931135, at *5 (quoting *Trans Union Corp. v. Federal Trade Comm'n*, 245 F.3d 809, 813 (D.C. Cir. 2001)). Here, Ms. Dolmage alleges that Combined Insurance collected, *inter alia*, Ms. Dolmage's and other Class members' names, addresses, date of births, Social Security numbers, and insurance enrollment and premium information, Compl. ¶¶ 1, 50, and, among other things, such information was used, or expected to be used, in establishing eligibility for insurance. Compl. ¶ 50. Nothing more is

required. *See Rowe*, 2010 WL 86391, at *3 ("[T]he information disclosed included medical information and . . . employment information and income. This information clearly falls into the 'personal characteristics' category, if not the 'credit worthiness' and 'credit capacity' categories."). Indeed, the mere fact that a person has, or is seeking, insurance through an employer—as exhibited by the enrollment and premium information in the instant case—affects an insurer's decision to insure the person and therefore bears on his or her credit worthiness and insurability.

Combined Insurance is wrong in asserting that Ms. Dolmage's PII relates "solely to transactions or experiences" between Ms. Dolmage and Combined Insurance. Ms. Dolmage's PII, including her name address, date of birth, Social Security number, and insurance enrollment and premium information is not so limited. Such information can be used for any number of purposes, the vast majority of which do not relate to transactions between Ms. Dolmage and Combined Insurance, including identify theft, identity fraud, and medical identity theft, as illustrated by the facts and circumstances set forth in Ms. Dolmage's Class Action Complaint.

### C. Ms. Dolmage Was Not Required to Allege that Combined Insurance Provided Information Directly to Criminals

Combined Insurance is wrong in asserting that under FCRA Ms. Dolmage was required to allege that Combined Insurance intentionally provided her PII to criminals. FCRA requires that Consumer Reporting Agencies as defined by the statute, such as Combined Insurance, "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). Combined Insurance violated this requirement in failing to implement and maintain reasonable, industry-standard security measures to ensure that Ms. Dolmage's and other Class members' PII was not disclosed without authorization and for an improper purpose. *See* Compl. ¶¶ 1–2, 18, 20–21, 33–34.

6

The FCRA provision at issue contains no requirement that Combined Insurance provide Ms. Dolmage's PII to criminals. *See* 15 U.S.C. § 1681e(a). Combined Insurance cites no statutory language reasonably supporting that a defendant's directly providing information to criminals is an element of a failure to "maintain reasonable procedures" FCRA claim brought under 15 U.S.C. § 1681e(a). Combined Insurance appears to confusing FCRA's "reasonable procedures" provision, 15 U.S.C. § 1681e(a)—the provision Ms. Dolmage alleges Combined Insurance Violated——with 15 U.S.C. § 1681b, which prohibits Consumer Reporting Agencies from furnishing Consumer Reports except for "permissible purposes." The two subsections are separate and distinct avenues to seek relief under FCRA. *See* Complaint, *In re Matter of Settlementone Credit Corp.*, No. 082 3208 ¶¶ 15, 16 (Federal Trade Commission), attached hereto as Exhibit D (alleging a violation of 15 U.S.C. § 1681e(a), in addition to a violation of 15 U.S.C. §1681b). To restrict FCRA violations only to instances where a Consumer Report is directly furnished to a criminal would improperly inject a limitation unsupported by FCRA's statutory text and would render this provision of FCRA entirely duplicative of 15 U.S.C. § 1681b—a provision not at issue. *See Bormes v. U.S.*, ___ F.3d ___, 2014 WL 3583937, at *1 (7th Cir. July 22, 2014) (interpreting FCRA as written by Congress) (Exhibit E). The argument is a vacuous as it is self-defeating. It is nonsense.

The cases cited by Combined Insurance on this issue are readily distinguishable. *Strautins v. Trustwave Holdings, Inc.*, No. 12 C 09115, 2014 WL 960816, at *8 (N.D. Ill. Mar. 12, 2014) (Exhibit F), found that the plaintiff did not allege that the defendant's purpose in collecting consumer information was to furnish such information to third parties. That is not the case here. Neither *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 (S.D. Cal. Jan. 21, 2014), nor *Holmes v. Countrywide Fin. Corp.*, No. 5:08-CV-00205-R, 2012

7

WL 2873892, at *16 (W.D. Ky. July 12, 2012) (Exhibit G), analyzes 15 U.S.C. § 1681e(a), the FCRA provision at issue here. And, *Willingham v. Global Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) (Exhibit H), relies on *Holmes* without explanation or analysis.

## II.    Ms. Dolmage Adequately Alleges a Violation of the Illinois Insurance Code and Negligence Per Se

Combined Insurance is wrong in asserting that Ms. Dolmage is not authorized to bring her claim under the Illinois Insurance Code and that it did not disclose her PII. Ms. Dolmage's right to recover for Combined Insurance's violation of the Illinois Insurance Code, 215 Ill. Comp. Stat. 5/1014, is expressly provided to her under subsection 1021(B), which states that "[a]n insurance institution, agent or insurance-support organization which discloses information in violation of Section 1014 of the Article shall be liable for damages sustained by the individual about whom the information relates." Ms. Dolmage, as an "individual about whom [the disclosed information] relates," is therefore entitled to bring an action.

The Code defines an "individual" as:

> any natural person who (1) in the case of property or casualty insurance, is a past, present or proposed named insured or certificateholder; (2) in the case of life, health or disability insurance, is a past, present or proposed principal insured or certificateholder; (3) is a past, present or proposed policyowner; (4) is a past or present applicant; (5) is a past or present claimant; or (6) derived, derives or is proposed to derive insurance coverage under an insurance policy or certificate subject to this Article is a past, present, or proposed policyowner, applicant, claimant.

215 Ill. Comp. Stat. 5/1003(J). "Person" is a separately defined term. 215 Ill. Comp. Stat. 5/1003(S). Ms. Dolmage may proceed under subsection 1021(B), even though she is not a "Person" residing in Illinois, because she is an "Individual" about whom disclosed information relates.

Defendant's reliance upon a general statutory statement of scope is superseded by the specific substantive right provided in a provision entitled "Individual Remedies." *See Murray v. Chi. Youth Ctr.*, 224 Ill. 2d 213, 233, 864 N.E.2d 176, 188 (2007) (particular provision that relates to only one subject prevails over one which is general and applies to cases generally). At no point in either subsection 1003(J) or 1021(B) is a state of residence requirement apparent.

Combined Insurance disclosed Ms. Dolmage's PII in violation of the Illinois Insurance Code. *See* 215 Ill. Comp. Stat. 5/1014 (prohibiting insurance companies from disclosing personal information received in connection with an insurance contract). To disclose means "to expose to view" or "to make known." *Webster's Third New Int'l Dictionary* 645 (1986). Combined Insurance was entrusted with Ms. Dolmage's PII and such information ended upon stored on an unsecure Internet server where it was accessible to unauthorized persons. These facts constitute "disclosure" under any reasonable interpretation of the term.

Combined Insurance's passing argument that negligence per se applies only to physical injuries is wrong. Negligence per se holds that the violation of a statute designed to protect human life or property is prima facie evidence of negligence where a plaintiff belongs to the class intended to be protected by the statute and the suffered injury is of the type the statute was intended to prevent. *Noyola v. Bd. of Educ. of the City of Chi.*, 179 Ill. 2d 121, 130, 688 N.E.2d 81, 84–85 (1997). As shown above, section 1014 was designed to protect individuals like the plaintiff from the foreseeable consequences of unauthorized disclosure of PII.

III.     **Ms. Dolmage States a Claim for Negligence**

To state a cause of action for negligence, a complaint must allege facts demonstrating a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately

caused by that breach. *Chandler v. Ill. Cent. R.R. Co.*, 207 Ill. 2d 331, 340, 349, 798 N.E.2d 724, 728, 734 (2003).

### A. Combined Insurance Owed a Duty of Ordinary Care to Ms. Dolmage

Ms. Dolmage's theory of liability relies upon well-established principles of tort law.

> [E]very person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons.

*Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 2012 IL 112479 ¶ 21, 973 N.E.2d 880, 887 (2012).

Combined Insurance was obligated to exercise ordinary care in protecting and securing Ms. Dolmage's PII. Combined Insurance breached this duty in failing to implement and maintain reasonable and industry-standard procedures to protect and secure Ms. Dolmage's PII entrusted to it. And, this breach resulted in Ms. Dolmage's PII being available to the public via the Internet for approximately 16 months, a fraudulent income tax return being submitted in Ms. Dolmage's name, unauthorized cell phone charges being incurred in Ms. Dolmage's name, and unauthorized medical charges being incurred in Ms. Dolmage's name.

Combined Insurance's reliance on *Cooney v. Chicago Public Schools*, 407 Ill. App. 3d 358, 943 N.E.2d 23 (1st Dist. 2010), is misguided. *Cooney* does not alter (or even address) the well-established ordinary standard of care standard. *See id.* Instead, *Cooney* holds that there is no common law duty to safeguard information—which would have essentially rendered negligence a strict liability issue in the case of data breaches—and that any duty created by the Illinois Personal Protection Information Act is limited to requiring a data broker to provide notice of a security breach. *Id.* Neither of the theories pursued in *Cooney* are at issue here.

**B. Combined Insurance's Negligence Was the Proximate Cause of Ms. Dolmage's Injuries**

In Illinois, "[t]o establish proximate cause, the plaintiff must show cause in fact and legal cause." *Ford-Sholebo v. United States*, 980 F. Supp. 2d 917, 991–92 (N.D. Ill. 2013) (citing *Bergman v. Kelsey*, 313 Ill. Dec. 862, 873 N.E.2d 486, 500 (1st Dist. 2007) (citing *Hooper v. Cnty. of Cook*, 366 Ill. App. 3d 1, 851 N.E.2d 663 (1st Dist. 2006)). Ms. Dolmage alleges facts demonstrating that Combined Insurance's negligence was the proximate cause of the injuries she has suffered.

When determining whether cause in fact exists, Illinois courts look to "whether the injury would have occurred absent the defendant's conduct." *Fort-Sholebo*, 980 F. Supp. 2d at 992 (quoting *City of Chi. v. Beretta USA Corp.*, 213 Ill. 2d 351, 821 N.E.2d 1099, 1127 (2004)). Here, it is clearly and properly alleged that the Security Breach and Ms. Dolmage's resulting injuries were a result of Combined Insurance's failure to adopt and maintain reasonable and industry-standard security measures to safeguard and protect Ms. Dolmage's and other Class members' PII. *See* Compl. ¶ 33. And, Ms. Dolmage's injuries would not have occurred absent Combined Insurance's negligence in this regard. Compl. ¶ 82. As such, Ms. Dolmage's factual allegations taken as true are sufficient to establish that Combined Insurance's negligence was the cause in fact of her injuries.

Legal cause is also well pled. When determining whether legal cause is present, Illinois courts look to whether "an injury was foreseeable as the type of harm that a reasonable person would expect to see as a likely result of his or her conduct." *Fort-Sholebo*, 980 F. Supp. 2d at 992. Identity theft occurs as a result of the theft of a person's PII, Compl. ¶ 22, and persons who receive notice that their PII has been the subject of a data security breach are almost ten times more likely to suffer identity theft. *See* Compl. ¶ 24. It was certainly foreseeable that Combined

11

Insurance's failure to adopt and maintain reasonable and industry-standard security measures to protect and secure Ms. Dolmage's PII would result in her suffering identity theft, tax fraud, and medical identity theft. *See* Compl. ¶¶ 22–33, 80; *see also U.S. v. Andrulonis*, 476 Fed. App'x 379, 382 (11th Cir. 2012) (fraudulent bank transfers reasonably foreseeable result of identity theft); *Wolfe v. MBNA Am. Bank*, 485 F. Supp. 2d 874, 882 (W.D. Tenn. 2007) ("injury resulting from the negligent issuance of a credit card is foreseeable and preventable").

## IV.     Ms. Dolmage States a Claim for Breach of Fiduciary Duty

The Complaint contains facts demonstrating the existence of a fiduciary relationship. "A fiduciary relationship exists where one party reposes trust and confidence in another, who thereby gains a resulting influence and a superiority over the subservient party." *Khan v. Deutsche Bank AG*, 2012 IL 112219, 365 Ill. Dec. 517, 978 N.E.2d 1020, 1041 (2012). Here, as Ms. Dolmage's insurer, Combined Insurance was authorized to and did receive intimate details about Ms. Dolmage's health, identity, lifestyle, and medical history. Once Combined Insurance possessed such intimate knowledge it gained influence and superiority over Ms. Dolmage with respect to that information such that a fiduciary relationship arose. The circumstances surrounding this specific fiduciary duty required Combined Insurance to maintain reasonable security measures to prevent these private details from surfacing in public. Combined Insurance's actions breached this duty.

## V.     Ms. Dolmage States a Claim for Breach of Express Contract

A contract must contain an offer, acceptance, and consideration, in sufficiently definite terms. *Halloran v. Dickerson*, 287 Ill. App. 3d 857, 867–68, 679 N.E.2d 774, 782 (5th Dist. 1997). Consideration is the bargained for exchange of promises or performances. *DiLorenzo v. Valve and Primer Corp.*, 347 Ill. App. 3d 194, 200, 807 N.E.2d 673, 678 (1st Dist. 2004).

12

The Complaint satisfies these elements. Ms. Dolmage alleges that Defendant promised to protect Plaintiff's PII in exchange for insurance premiums. Compl. ¶ 88. The Privacy Pledge was not a "unilateral statement of corporate policy," but rather a part of the bargained for exchange. *See Huong Hoang v. Amazon.com, Inc.*, No. C11-1709MJP, 2012 WL 1088165, at \*3 (W.D. Wash. Mar. 30, 2012) (Privacy Policy forms part of the contract) (Exhibit I). Attempting to rebut this point, Combined Insurance asserts that the Privacy Pledge was not part of the agreement between the parties because of when it was provided to Ms. Dolmage. Such factual contentions are outside of the scope of the pleadings and inappropriate for consideration at this stage.

## VI.    Ms. Dolmage States a Claim for Breach of Implied Contract

Policy statements can create enforceable contractual rights if the traditional requirements for contract formation are present. *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318 (1987). In *Duldulao*, the Illinois Supreme Court held that an employee handbook that was distributed seven years after the plaintiff was hired created an enforceable right to the particular disciplinary procedures described therein prior to termination. *Id.* at 318. The handbook was sufficiently definite and the plaintiff continued to work for the employer with knowledge of the handbook's provisions. *Id.* at 318–19.

Just as the employee handbook in *Duldulao* created rights to disciplinary procedures, the Privacy Pledge created enforceable rights as to the purported security procedures described therein. Within the Privacy Pledge, Combined Insurance makes promises to protect Ms. Dolmage's PII in no uncertain terms. Additionally, Combined Insurance distributed the Privacy Pledge to Ms. Dolmage with the intent that she read it, understand it, and rely upon it. And, Ms. Dolmage made premium payments to Combined Insurance for insurance. *See* Compl. ¶¶ 9, 89. Therefore, a contract was formed, the breach of which is actionable.

13

## VII.    Ms. Dolmage States a Claim for Unjust Enrichment

To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *HPI Health Care Servs., Inc. v. Mount Vernon Hosp., Inc.*, 131 Ill. 2d 145, 161, 545 N.E.2d 672, 679 (1989). Ms. Dolmage conferred a benefit upon Combined Insurance in the form of insurance premiums, a portion of which was to fund reasonable and industry-standard security measures. Compl. ¶ 102. The storage of the PII on unsecure servers did not live up to Defendant's representations in its Privacy Pledge or reasonable and industry-standard requirements. Good conscience dictates that Combined Insurance should refund the money to prevent unjust enrichment. *See Raintree Homes, Inc. Vill. of Long Grove*, 209 Ill. 2d 248, 257, 807 N.E.2d 439, 445 (2004).

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012), is instructive on this point. There, the Eleventh Circuit Court of Appeals held that a data breach victim stated a claim for unjust enrichment against a health care plan provider. *Id.* at 1128. The court reasoned that the defendant appreciated and accepted the benefit of monthly premiums paid by the plaintiff in part for "the administrative costs of data management and security." *Id.* Because the defendant had not actually put the portion of those payments toward security measures as mandated by industry standards and law, it was unjustly enriched. The same result is appropriate here.

## VIII.    Ms. Dolmage States a Claim for Public Disclosure of Private Facts

Public disclosure of private facts occurs when (1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public

would be highly offensive to a reasonable person. *Johnson v. Kmart Corp.*, 311 Ill. App. 3d 573, 579, 723 N.E.2d 1192, 1197 (1st Dist. 2000).

Publicity was given to the disclosure of the PII. "Any person or organization with a computer connected to the Internet can 'publish' information" by "mak[ing] their material available to the entire pool of Internet users, or confin[ing] access to a selected group." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 853 (1997); *see also Yath v. Fairview Clinics, N.P.*, 767 N.W.2d 34, 43 (Minn. Ct. App. 2009) (publicity element met where private information was posted to public webpage for anyone to view). Combined Insurance placed Ms. Dolmage's PII on a publicly accessible website for at least 16 months. Compl. ¶ 11. "The widespread exposure of the information in this case" and numerous allegations of identity theft warrant "the inference that the information was accessed at some point." *Rowe*, 2010 WL 86391, at *3.

Ms. Dolmage's and other Class members' PII without question consists of private facts. Combined Insurance has been secretive about what types of information are contained in its enrollment and premium information, yet it has knowledge of it. Discovery may reveal that they bear upon Ms. Dolmage's and other Class members' "family matters, health problems or sex life." *Johnson*, 311 Ill. App. 3d at 579, 723 N.E.2d at 1197. *Cooney's* dismissal of the plaintiffs' privacy claims, *see* 407 Ill. App. 3d at 366–67, 943 N.E.2d at 32, is inapposite, because the PII here includes information on Plaintiff's insurance enrollment and premiums. Ms. Dolmage's public disclosure of private facts claim is well pled.

## CONCLUSION

For the reasons stated herein, Combined Insurance's motion to dismiss Ms. Dolmage's Class Action Complaint should be denied.

Dated:  September 5, 2014                  Respectfully submitted,

                                           /s/  Ben Barnow
                                           One of the Attorneys for Plaintiff

                                           Ben Barnow
                                           Sharon Harris
                                           Erich P. Schork
                                           Barnow and Associates, P.C.
                                           One N. LaSalle Street, Ste. 4600
                                           Chicago, IL 60602
                                           Telephone: (312) 621-2000
                                           Facsimile: (312) 641-5504
                                           Email: b.barnow@barnowlaw.com
                                           Email: s.harris@barnowlaw.com
                                           Email: e.schork@barnowlaw.com

                                           Ralph K. Phalen (admitted *pro hac vice*)
                                           Ralph K. Phalen Law, P.C.
                                           1000 Broadway, Ste. 400
                                           Kansas City MO 64105
                                           Telephone: (816) 589-0753
                                           Facsimile: (816) 471-1701
                                           Email: phalenlaw@yahoo.com

                                           Mitchell L. Burgess (admitted *pro hac vice*)
                                           Burgess & Lamb, P.C.
                                           1000 Broadway, Ste. 400
                                           Kansas City, MO 64105
                                           Telephone: (816) 471-1700
                                           Facsimile: (816) 471-1701
                                           Email: mitch@burgessandlamb.com

16

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's ECF filing system.


Dated: September 5, 2014          s/ Ben Barnow

Ben Barnow
Barnow and Associates, P.C.
One N. LaSalle Street, Ste. 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504
Email: b.barnow@barnowlaw.com

17